UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Micronics Filtration Holdings,
Inc.,

     v.                             Civil No. 18-cv-303-JL
                                       Opinion No. 2018 DNH 198
Timothy Miller, Peter Kristo,
and Pure Filtration, LLC

**MEMORANDUM ORDER**

This trade-secrets case involves the adequacy of factual allegations in a complaint, as well as preemption under the New Hampshire Uniform Trade Secrets Act ("NHUTSA") and the heightened pleading requirements of Rule 9(b). Plaintiff Micronics Filtration Holdings, Inc. brought this suit against two former Micronics sales executives, Tim Miller and Peter Kristo, and the competing business they have formed, Pure Filtration, LLC. Micronics alleges that the defendants have misappropriated its trade secrets and confidential information, disparaged Micronics to third parties, and violated other contractual obligations. Micronics' amended complaint brings a federal claim under the Defend Trade Secrets Act ("DTSA"), a claim under the NHUTSA, and several other state law claims.

This court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question) in light of the plaintiff's DTSA claim, and over plaintiffs' state-law claims

under § 1367 (supplemental jurisdiction).  Defendants have moved
to dismiss all claims.  After oral argument, the court grants
this motion in part and denies it in part.  Specifically, the
court denies defendants' motion with respect to Micronics' trade
secret claims under the DTSA and the NHUTSA and its claims for
breach of contractual confidentiality agreements against Miller
and Kristo.  But claims for intentional interference with
contractual relations and violation of the New Hampshire
Consumer Protection Act ("NHCPA") are dismissed because of a
combination of NHUTSA preemption and failure to meet the
heightened pleading requirements of Rule 9(b) for claims
sounding in fraud.  And claims for defamation and breach of
employee non-solicitation provisions are also dismissed because
the allegations in the amended complaint are insufficient to
state these claims.

I.  **Applicable legal standard**

"A pleading that states a claim for relief must contain,"
among other things, "a short and plain statement of the claim
showing that the pleader is entitled to relief."  Fed. R. Civ.
P. 8(a)(2).  To satisfy this requirement, a plaintiff must
include "factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged."  Martinez v. Petrenko, 792 F.3d 173, 179

(1st Cir. 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678
(2009)).  In other words, the complaint must "contain sufficient
factual matter, accepted as true, to state a claim to relief
that is plausible on its face." SEC v. Tambone, 597 F.3d 436,
442 (1st Cir. 2010) (quoting Iqbal, 556 U.S. at 678).

At the Rule 12(b)(6) stage, the court must "take the
complaint's well-pleaded facts as true," and "draw all
reasonable inferences in the plaintiffs' favor." Barchock v.
CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018).  But "[w]ell-
pleaded facts must be 'non-conclusory' and 'non-speculative.'"
Id.  "If the factual allegations in the complaint are too
meager, vague, or conclusory to remove the possibility of relief
from the realm of mere conjecture, the complaint is open to
dismissal." Id. (quoting Iqbal, 556 U.S. at 678).

Documents outside of the pleadings are generally not
considered in ruling on a motion to dismiss. Flores v. OneWest
Bank, F.S.B., 886 F.3d 160, 167 (1st Cir. 2018).  The court may,
however, consider documents attached to or explicitly
incorporated in the complaint, and "narrow exceptions [exist]
for documents the authenticity of which are not disputed by the
parties; for official public records; for documents central to
plaintiffs' claim; or for documents sufficiently referred to in

the complaint." Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).[1]

## II.  <u>Analysis</u>

### A.  Trade secret claims

Micronics brings both federal and state claims for trade secret misappropriation under the DTSA and the NHUTSA.  The parties agree that the requirements to state a claim under the DTSA and the NHUTSA are not meaningfully different for this case and have argued the claims together.[2] For the reasons set forth on the record at the hearing, Micronics has stated claims under

---

[1] In briefing and at the hearing, Micronics sought to rely on facts alleged in attachments to its motion for a preliminary injunction, which it filed prior to amending its complaint.  But it has not shown why these documents fit within any of the exceptions to the usual rule.  Micronics had every opportunity to amend its complaint to incorporate these allegations. Indeed, Micronics represented to the court that it would be further amending the complaint after withdrawing its preliminary injunction motion, but it chose not to.  The attachments to the preliminary injunction motion will thus not be considered on this motion to dismiss the amended complaint.

[2] The definitions of misappropriation in the DTSA and the NHUTSA differ only in form.  18 U.S.C. § 1839; N.H. Rev. Stat. Ann. § 350-B:1.  The definitions of trade secret differ slightly, but have very similar requirements.  Id.; cf. H.R. Rep. No. 114-529, at 5, 13 (2016) (DTSA's definition of misappropriation modeled on Uniform Trade Secrets Act and DTSA intended to "bring the Federal definition of a trade secret in conformity with the definition used in the" Uniform Trade Secrets Act).

both statutes and the motion to dismiss is denied as to these counts.[3]

**B.  State-law claims**

Micronics also brings several state-law claims under the following theories:  (1) intentional interference with existing contractual relations; (2) violation of the NHCPA; (3) confidentiality-related breach of contract; (4) employee-solicitation-related breach of contract; and (5) defamation. The defendants move to dismiss these claims for failure to state a claim.  As discussed below, Micronics has pleaded factual allegations such that it states a claim for confidentiality-related breach of contract, but not for intentional interference with contractual relations, violation of the NHCPA, employee-solicitation-related breach of contract, or defamation.

**1.  Intentional interference with existing contractual relations**

Under New Hampshire law:

To establish liability for intentional interference with contractual relations, a plaintiff must show: (1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of this relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference.

---

[3] See Am. Compl. (doc. no. 16) ¶¶ 8-15, 45-53.

Hughes v. N.H. Div. of Aeronautics, 152 N.H. 30, 40-41 (2005); Greenwood ex rel. Estate of Greenwood v. N.H. Pub. Utils. Comm'n, 527 F.3d 8, 14 (1st Cir. 2008). "Mere interference, in itself, is legally insufficient to state a claim. Rather, '[o]nly improper interference is deemed tortious in New Hampshire.'" Kitty v. Worth Development Corp., 184 Fed.Appx. 17, 19 (1st Cir. 2006) (quoting Roberts v. Gen. Motors Corp., 138 N.H. 532, 540 (1994)).

Micronics alleges that it has existing economic and contractual relations with "customers, consultant, and vendors," and that defendants were aware of these relations though Miller and Kristo's employment with Micronics.[4]  It further alleges that defendants intentionally and improperly interfered with these relations "by maliciously reporting to Micronics' customers, consultants, and vendors, that Micronics was going out of business and could no longer satisfy its existing or future contractual obligations" and by "wrongfully leveraging Micronics' customers, consultants, and vendors, to move their business to Pure Filtration."[5]  Drawing all reasonable inferences in Micronics' favor, then, it alleges two means by which defendants improperly interfered:  misuse of confidential

---

[4] Am. Compl. (doc. no. 16) ¶ 71.

[5] Id. at ¶¶ 71-72.

information and deceptive statements to customers, vendors, and consultants.  Micronics also specifically alleges interference in its relationships with consultants Dewatering Solutions and Ferotex and vendors Ishigaki and JVK.[6]  But it does not provide any additional specifics on how the alleged interference with these specific customers was improper.  The only means of improper interference Micronics alleges are misuse of confidential information and deceptive statements.  But neither alleged means ultimately allows Micronics to state a claim for improper interference.

### a)    Misuse of confidential information

Micronics attempts to base an intentional interference claim on the misuse of trade secrets or other confidential information.  But the NHUTSA preempts tort claims relying on misuse of confidential information.  The NHUTSA "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."  N.H. Rev. Stat. Ann. § 350-B:7.  It provides exceptions only for:

> (a) Contractual remedies, whether or not based upon misappropriation of a trade secret;

> (b) Other civil remedies that are not based upon misappropriation of a trade secret; or

---

[6] Id. at ¶¶ 73-77.

(c) Criminal remedies, whether or not based upon
            misappropriation of a trade secret.

Id.  This provision "preempts claims that are based upon the
unauthorized use of information, regardless of whether that
information meets the statutory definition of a trade secret."
Mortg. Specialists, Inc. v. Davey, 153 N.H. 764, 777 (2006);
Wilcox Indus. Corp. v. Hansen, 870 F.Supp.2d 296, 303
(Barbadoro, J.) ("Claims based on unauthorized use of
confidential information are preempted even if the information
at issue is not a trade secret.").

        "The preemption provision applies when a claim is 'based
solely on, or to the extent that it is based on, the allegations
or the factual showings of unauthorized use of information or
misappropriation of a trade secret.'" Wilcox, 870 F.Supp.2d at
303 at 10 (quoting Mortg. Specialists, 153 N.H. at 778).  A
claim can survive "to the extent that it alleges wrongful
conduct independent of any alleged unauthorized use of
information" and these independent allegations "are sufficient
to plead all elements of the claim." Wilcox, 870 F.Supp.2d at
304.  Micronics' intentional interference claim relies, in part,
on alleged misuse of confidential information to show that

defendants improperly interfered.[7]  This basis for the claim is preempted by the NHUTSA.

### b) Deceptive statements

As its remaining potential factual basis for its intentional interference claim, Micronics alleges that the defendants told customers, vendors, and consultants that Micronics was going out of business and would not be able to satisfy its contractual obligations.  Defendants argue that this portion of the claim sounds in fraud and is thus subject to the heightened specificity standard of Federal Rule of Civil Procedure 9(b).[8]  The Court agrees.

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  To meet this standard, a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  Suna v. Bailey Corp., 107 F.3d 64, 73 (1st Cir. 1997); Rodi v.

---

[7] Am. Compl. (doc. no. 16) ¶¶ 22, 27, 47-52, 72-77.

[8] Mem. in Supp. of Defs.' Mot. to Dismiss (doc. no. 25-1) at 19-21.

S, New Eng. Sch. of Law, 389 F.3d 5, 15 (1st Cir. 2004) ("This heightened pleading standard is satisfied by an averment of the who, what, where, and when of the allegedly false or fraudulent representation.").

Micronics argues that it does not allege fraud as a cause of action, and so is not subject to this heightened standard. But "Rule 9(b)'s requirements apply to both general claims of fraud and also to 'associated claims . . . where the core allegations effectively charge fraud.'" Mulder v. Kohl's Dep't Stores, Inc., 865 F.3d 17, 22-23 (1st Cir. 2017) (quoting N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 15 (1st Cir. 2009)). Micronics alleges that defendants "maliciously" made "patently false" statements to advantage themselves and harm Micronics.[9] These allegations effectively charge fraud, so claims based on them are subject to Rule 9(b).

Micronics highlights Cardinale's statement that "arguably Rule 9(b) does not apply [to tortious interference claims] except so far as fraud is specifically alleged as an ingredient of the claim." 567 F.3d at 14. Micronics emphasizes that the plaintiff in Cardinale explicitly alleged fraud and so argues that it has made no specific allegation of fraud "because there is no reference to fraudulent conduct in the Amended Complaint".

---

[9] Am. Compl. (doc. no. 16) ¶¶ 28, 71.

Pl.'s Obj. (doc. no. 32) ¶ 41.  While Cardinale notes the explicit pleading of fraud, it also makes clear that "the case law here and in other circuits reads Rule 9(b) expansively to cover associated claims where the core allegations effectively charge fraud." 567 F.3d at 15.  The absence of the labels "fraud" or "fraudulent" in a complaint is not determinative if the core factual allegations being made "effectively charge fraud."  Here, after the preempted allegations are removed, the remaining allegations are of intentional and malicious false statements.[10]  Micronics has not pleaded fraud, but it "effectively" alleges that defendants made fraudulent misrepresentations to third parties.  These allegations cannot serve as the "lynchpin" of an intentional interference claim without triggering Rule 9(b).  Id. at 14-15.

Given Micronics' focus on whether fraud was explicitly pleaded, it did not directly address whether it effectively alleged that defendants committed fraud.  Tellingly, it did characterize the otherwise identical alleged statements as "fraudulent" in its original complaint.  Compl. (doc. no. 1) ¶ 47.  But it might have argued that the alleged statements could not be considered fraudulent because of a mismatch between reliance and injury.  The "textbook elements of a fraud" include

---

[10] Am. Compl. (doc. no. 16) ¶¶ 28, 71.

"an intent on the part of the defendant that the statement . . .
should be acted upon by the plaintiff" and "the detrimental
reliance upon the false representation . . . by the person
claiming to have been deceived."  5A Charles Allen Wright,
Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, Federal
Practice and Procedure § 1297 (3d ed. 2018); see Tessier v.
Rockefeller, 162 N.H. 324, 331-332 (2011) ("One who fraudulently
makes a misrepresentation . . . for the purpose of inducing
another to act or to refrain from action in reliance upon it, is
subject to liability to the other in deceit for pecuniary loss
caused to him by his justifiable reliance upon the
misrepresentation.").  Micronics' claims necessarily imply that
customers, vendors, and consultants relied on defendants'
statements, resulting in injury to Micronics.  Micronics
certainly did not rely on these statements though, and it does
not necessarily follow from the allegations that the customers,
vendors, and consultants were or will be injured by their
reliance.

    Micronics could have argued (but did not)[11] that fraud is
not implicated unless it, as plaintiff, relied on the
statements.  But allegations can sound in fraud even if the

_____

[11] See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)
("[I]ssues adverted to in a perfunctory manner, unaccompanied by
some effort at developed argumentation, are deemed waived.").

plaintiff is not the one defrauded.  A third party can be
injured by fraud.  See Bridge v. Phoenix Bond & Indem. Co., 553
U.S. 639, 656 (2008) ("[W]hile it may be that first-party
reliance is an element of a common-law fraud claim, there is no
general common-law principle holding that a fraudulent
misrepresentation can cause legal injury only to those who rely
on it."); Restatement (Second) of Torts § 767 cmt. a (Am. Law
Inst. 1979) (contemplating that one may be "liable to another
for intentional interference with economic relations by inducing
a third person by fraudulent misrepresentation not to do
business with the other.").  Cardinale applied Rule 9(b) even
where fraudulent misrepresentations were only relied on by other
parties.  567 F.3d at 14.

Micronics also might have argued (but again, did not)[12] that
allegations cannot effectively charge fraud unless a relying
party is injured as a result of the misrepresentation, and that
it has not done so here because the third parties were not so
injured.  Instead, at the hearing, Micronics argued that
defendants misrepresented their own ability to fulfill to
customer needs, which implies that customers, vendors, or
consultants who relied on the alleged statements will be
injured.  And district courts in other circuits have required

---

[12] Supra note 11.

factual allegations analogous to those in Micronics' amended complaint to meet Rule 9(b)'s requirements even though the plaintiff did not rely on the statements at issue and the relying third parties were not necessarily injured. See, e.g., Int'l Equip. Trading, Ltd. v. Illumina, Inc., 312 F. Supp. 3d 725, 734-35 (N.D. Ill. 2018) ("Rule 9(b) heightened pleading requirements apply to intentional interference claims when the claim alleges the defendant engaged in "fraudulent conduct," including making false statements to potential customers."); Purac Amercia Inc. v. Birko Corp., No. 14-CV-01669-RBJ, 2015 WL 1598065, at *6 (D. Colo. Apr. 8, 2015) ("Birko's theory [of tortious interference] is that Purac induced Birko customers to end their relationships with Birko by making false statements to the customers. Thus, in alleging this inducement, Birko must satisfy the requirements of Rule 9(b).").

The court is therefore satisfied that the Rule 9(b) standard applies here, even though Micronics did not explicitly plead fraud. And as it admitted at oral argument, its Micronics' allegations do not meet that standard. It alleges the content of the statement, but the remaining elements are unclear at best. The court need not consider if the identity of the speaker or why the statements were fraudulent are adequately alleged, because Micronics has clearly not alleged where and when the statements were made. The general allegation that

statements were made to "customers, vendors, and consultants" offers no meaningful specification.[13]  Micronics' allegations about these statements sound in fraud but are too general to meet Rule 9(b) and so cannot be the basis for a claim.  See Sanchez v. Triple-S Management, Corp., 492 F.3d 1, 11 (1st Cir. 2007) (Rule 9(b) "does not permit a complainant to file suit first, and subsequently to search for a cause of action.").[14]

Micronics' claim for intentional interference cannot proceed based on misuse of confidential information because of NHUTSA preemption and cannot proceed based on allegations of deceptive statements that fail to meet the Rule 9(b) standard. This claim is therefore dismissed.

---

[13] Documents attached to Micronics' motion for a preliminary injunction, filed before the amended complaint, arguably provides details regarding alleged statements to one customer. (Doc. no. 8).  But Micronics did not attach or explicitly incorporate any of these documents into its amended complaint, and has not shown that any of the narrow exceptions that might otherwise allow consideration of documents beyond the complaint apply, as discussed supra Part I.

[14] Micronics could have argued that the particularity required by 9(b) should be relaxed where the fraudulent conduct was directed to third parties. See 5A Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, & A. Benjamin Spencer, Federal Practice and Procedure § 1297 (3d ed. 2018) ("When the pleader is asserting that third persons have been defrauded, the pleader may lack sufficient information to be able to detail the claim at the outset of the action and less particularity should be required.").  But Micronics' allegations are devoid of any level of detail, and so would fail to satisfy even a more relaxed version of the standard.

**C.  New Hampshire Consumer Protection Act**

The NHCPA makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within" New Hampshire."  N.H. Rev. Stat. Ann. § 358-A:2.  The prohibited conduct explicitly includes "disparaging the goods, services, or business of another by false or misleading representation of fact," but is not limited to acts specifically listed.  Id.; Mortg. Specialists, 153 N.H. at 781.

Micronics' allegations in support of its NHCPA claim are essentially identical to those supporting its intentional interference claim.  It alleges that "[d]efendants engaged in unfair and deceptive acts and practices in trade and commerce when they falsely and maliciously reported to Micronics' customers, consultants, and vendors that Micronics was going out of business and could no longer satisfy its existing or future contractual obligations," and that "[d]efendants also violated the NHCPA by attempting to leverage Micronics' customers, consultants, and vendors, to move their business to Pure Filtration through the use of illegally obtained information."[15] Micronics thus alleges that defendants violated the NHCPA by the same two means in which they intentionally interfered:  improper

---

[15] Am. Compl. (doc. no. 16) ¶¶ 81-82.

use of trade secrets or confidential information and deceptive statements to customers, vendors, and consultants.

Micronics fails to state a claim under the NHCPA claim for the same reasons that it fails to state an intentional interference claim:  preemption and the heightened pleading standard of Rule 9(b).  To the extent the claim relies on misuse of confidential information, it is preempted by the NHUTSA.  See Mortg. Specialists, 153 N.H. at 781; Wilcox, 870 F.Supp.2d at 304-06.  As Micronics admits, the remainder of its claim relies on the allegation of false and malicious statements.[16]  But Rule 9(b) applies to allegations supporting a NHCPA claim that sound in fraud.  Archdiocese of San Salvador v. FM Intern., Inc., No. 05-cv-237-JD, 2006 WL 437493 at *7 (DiClerico, J.); cf. Mulder, 865 F.3d 17 at 21-22 (applying Rule 9(b) to a Massachusetts Consumer Protection Act claim).  The same Rule 9(b) analysis applies, so Micronics' NHCPA claim must also be dismissed.

### D.   Breach of Contract

Micronics brings two breach of contract claims against defendants Miller and Kristo.  First, it alleges that these defendants breached obligations under the Shareholders Agreement and Stockholders Agreement against the use or disclosure of confidential information and trade secrets.  Second, it alleges

---

[16] Pl.'s Obj. (doc. no. 32) ¶ 46.

that they breached obligations under these same agreements to not solicit or hire, subject to certain exceptions, current or former employees of Micronics.  Micronics states a claim for confidentiality-related breach of contract, but does not provide enough factual allegations to state a claim for employee-solicitation-related breach of contract.

### 1.  Confidentiality

The Shareholders Agreement and Stockholder Agreement, both signed by Miller and Kristo, provide that each Shareholder and Stockholder agrees "not to use or disclose any proprietary, confidential or nonpublic information or trade secrets of or relating to or in the possession of the Company for any purpose that does not relate to the Company without the consent of the Company" except to the extent required by law, for disclosure to certain parties bound to confidentiality, or to the extent the information is already in the public domain through no fault of their own.[17]  Micronics alleges that Miller and Kristo violated these provisions by using and disclosing confidential and proprietary information and trade secrets.[18]  These claims are not subject to NHUTSA preemption, as they fall within the

---

[17] Shareholders Agreement (doc. no. 16-2) at § 11.3; Stockholders Agreement (doc. no. 16-3) at § 11.3.

[18] Am. Compl. (doc. no. 16) at ¶¶ 87-90.

exception for contractual claims.  N.H. Rev. Stat. Ann. § 350-B:7.

Defendants' arguments on this claim are essentially the same as against the trade secret claims.  They argue that Micronics has not shown what confidential information Miller and Kristo allegedly misused, and that any allegedly confidential information or trade secrets are in the public domain.[19]  The court has found that Micronics sufficiently alleged the misappropriation of trade secrets to meet the Rule 12(b)(6) standard, supra Part II.  Those allegations necessarily involve the misuse of confidential, non-public information, so Micronics has also sufficiently alleged this breach of contract claim at the motion to dismiss stage.  Micronics' confidentiality-based claims for breach of contract against Miller and Kristo are not dismissed.

### 2.   Non-solicitation of employees

The Shareholders Agreement and Stockholders Agreement also provide that certain Shareholders and Stockholders, including Miller and Kristo, agree that they:

> shall not, without the prior written consent of the Company, directly or indirectly, for himself or herself or in conjunction with any other Person, or assist any other Person to, call upon, solicit, employ or hire away any Person who is or was, at any time

---

[19] Mem. in Supp. of Defs.' Mot. to Dismiss (doc. no. 25-1) at 22-23.

during the [Shareholder's/Stockholder's] employment
with the Company or any of its Affiliates, an
employee, contractor, subcontractor or independent
consultant of the Company or any of its Affiliates
(each, a "<u>Designated Person</u>"); <u>provided</u>, <u>however</u>,
that, after the [Shareholder/Stockholder] is no longer
employed with the Company or any of its Affiliates,
this Section 11.4 shall not (i) prohibit the
[Shareholder/Stockholder] from solely making a
general, public solicitation for employment that does
not target any such Designated Person or (ii) prohibit
the [Shareholder/Stockholder] from soliciting and
hiring a Designated Person after two (2) years after
such Designated Person's employment with the Company
and its Affiliates has ceased.[20]

Micronics alleges that Miller and Kristo violated these
provisions "through the solicitation of Micronics' employees
within two years of their respective resignations."[21] But it does
not allege any further facts regarding this solicitation.[22] The
bare allegation of breach is not sufficient to meet the
requirements of Rule 12(b)(6). Micronics did not defend the
employee solicitation claim in briefing this motion.[23]
Micronics' breach of contract claims against Miller and Kristo
for violation of non-solicitation agreements are dismissed.

---

[20] Shareholders Agreement (doc. no. 16-2) at § 11.4; Stockholders
Agreement (doc. no. 16-3) at § 11.4.

[21] Am. Compl. (doc. no. 16) at ¶¶ 30, 91.

[22] There are again potential allegations contained within
Micronics' attachments to its motion for a preliminary
injunction, but these documents cannot be considered on this
motion to dismiss, <u>supra</u> Part I.

[23] Pl.'s Obj. (doc. no. 32) ¶¶ 48-52.

**E.    Defamation**

Micronics alleges that defendants published "false statements to Micronics' customers, consultants, and vendors, that Micronics was going out of business and could no longer satisfy existing and future contractual obligations."[24]  But there are no supporting factual allegations providing any further details of these statements, <u>supra</u> Part III-A-2.  A defamation claim requires far greater specification to survive a motion to dismiss.  Cf. Cluff-Landry v. Roman Catholic Bishop of Manchester, 169 N.H. 670, 680 (2017) (defamation claim requires the complaint identify the substance of the statements, the person making the statements, and when and to whom they were made.).  In both its objection to the motion to dismiss and oral argument, Micronics has pointed to affidavits attached to its motion for a preliminary injunction as containing detail regarding specific acts of defamation.[25] But it did not include these allegations in its amended complaint and has not shown that any of the limited exceptions that might allow their consideration on a motion to dismiss apply, as discussed <u>supra</u> Part I.  Micronics' defamation claim must therefore be dismissed.

---

[24] Am. Compl. (doc. no. 16) at ¶ 96.

[25] Pl.'s Obj. (doc. no. 32) ¶ 55.

## III. **Conclusion**

While Micronics has adequately alleged claims under the DTSA, the NHUTSA, and for breach of contractual confidentiality provisions, its remaining state law claims are either preempted by the NHUTSA or do not meet the applicable pleading standard. Defendants' motion to dismiss[26] is therefore DENIED-IN-PART, as to the trade secrets claims and confidentiality-related breach of contract claim, and GRANTED-IN-PART to dismiss claims for intentional interference with contractual relations, violation of the NHCPA, employee-solicitation-related breach of contract, and defamation.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:    October 4, 2018

cc:  W. Fulton Broemer, Esq.
     Matthew R. Johnson, Esq.
     Mark B. Rosen, Esq.

---

[26] Doc. no. 25.